UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| LEWIS D. CHRISTOPHERSON, | ) | |
| | ) | 3:13-cv-00114-MMD-VPC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF U.S. MAGISTRATE JUDGE** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | March 24, 2014 |
| | ) | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for remand and/or reversal (#17).[1] Defendant filed an opposition and a cross-motion to affirm (#s 28 and 29).[2] Plaintiff replied (#30). For the reasons set forth below, the court recommends that plaintiff's motion for remand (#17) be denied, and defendant's cross-motion to affirm (#29) be granted.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

On June 3, 2008, plaintiff Lewis D. Christopherson ("plaintiff") filed an application for Supplemental Security Income ("SSI") under Title II of the Social Security Act (Administrative Record "AR" 215-221), alleging disability beginning June 3, 2008. *Id*. at 41. Plaintiff alleged disability due to chronic neck and back pain, a past heart attack and borderline intellectual functioning. *Id*. at 43. At the time of the alleged onset of disability, plaintiff was forty years old. *Id*.

---

[1] Refers to the court's docket numbers.
[2] This was docketed as two motions; hereafter, it will be referred to as #29.

at 55. He completed tenth grade and has a GED. *Id*. at 94. Defendant Commissioner denied plaintiff's application initially and on reconsideration. *Id*. at 129-132, 135-137.

On January 14, 2011, plaintiff and his attorney appeared at a hearing before Administrative Law Judge ("ALJ") Peter Belli. *Id.* at 63-98. The ALJ followed the five-step sequential process for evaluating disability claims, set forth in 20 C.F.R. § 404.1520, and issued a written decision on March 15, 2011, finding plaintiff had "not been disabled" pursuant to the Social Security Act at any time from the alleged onset date through the date of the ALJ's decision. *Id.* at 41-57. Plaintiff appealed, and the Appeals Council denied review. *Id.* at 1-8. Thus, the ALJ's decision became the final decision of the Commissioner.

On March 8, 2013, having exhausted all administrative remedies, plaintiff filed a complaint for judicial review (#1-1). Plaintiff contends the ALJ's decision was based on legal error and that his residual functional capacity assessment and credibility analysis are not supported by substantial evidence in the record (#17, pp. 7-15). Accordingly, plaintiff asks the court to reverse or remand the ALJ's decision. *Id.* at 3.

## II. STANDARD OF REVIEW

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F. 3d 748, 749 (9th Cir. 1995) (citation omitted). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Id*. at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The initial burden of proof rests upon the claimant to establish disability. 20 C.F.R. § 404.1512(a); *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986) (citations omitted). To meet this burden, a plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . " 42 U.S.C. § 423 (d)(1)(A).

### III. DISCUSSION

**A. Five-Step Sequential Process**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If at any step the Social Security Administration (SSA) can make a finding of disability or nondisability, a determination will be made and the SSA will not further review the claim. 20 C.F.R. § 404.1520(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20

C.F.R. § 404.1520(a)(4)(i), (b); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combinations of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. Basic work activities are "the abilities and aptitudes necessary to do most jobs[,]" which include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521. If a claimant's impairment is so slight that it causes no more than minimal functional limitations, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii), (c). If, however, the Commissioner finds that the claimant's impairment is severe, the Commissioner proceeds to step three. *Id*.

In the third step, the Commissioner determines whether the impairment is equivalent to one of a number of specific impairments listed in 20 C.F.R. pt. 404, subpt. P, app.1 ("Listed Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen (15) years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a). The ALJ reviews the claimant's "residual functional capacity" ("RFC") and the physical and mental demands of the work previously performed. *See id.*; *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545. In determining RFC, an ALJ must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. *See* 20 C.F.R. § 404.1545(a).

At step four, the ALJ may consider any of the claimant's daily activities that "may be seen as inconsistent with the presence of a condition which would preclude all work activity." *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (upholding denial of disability benefits where claimant could "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries"); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding denial of benefits based in part on determination that claimant performed daily activities that were transferrable to a work setting); compare *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (concluding activities not transferrable to work setting); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (claimant should not be "penalized for attempting to lead [a] normal [life] in the face of [her] limitations"); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 2007) (noting that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f); *see also Berry*, 662 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e), (f); *see also Yuckert*, 482 U.S. at 141-142, 144. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The ALJ may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F. 3d 1094, 1100 (9th Cir. 1999).

"The [G]rids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth in rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers

of unskilled jobs that exist throughout the national economy at the various functional levels. *Id*. Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id*. For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id*.

The ALJ may not rely solely on the Grids unless they accurately and completely describe the claimant's abilities and limitations. *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985) (citation omitted). The ALJ must take the testimony of a vocational expert where the claimant suffers from non-exertional limitations that are "sufficiently severe so as to significantly limit the range of work permitted by his exertional limitation." *Hoopai*, 499 F.3d at 1076 (internal quotation and citation omitted). Further, where the ALJ finds that a nonexertional limitation alone is severe [at step two of the sequential process] (absent any exertional limitation), the ALJ is not required to seek the assistance of a vocational expert at step five unless the nonexertional limitation(s) are "significant, sufficiently severe, and not accounted for in the grid[s]." *See id*. at 1076.

If, at step five, the ALJ establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the ALJ determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). However, "[a] finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Bustamante*, 262 F.3d at 954.

**B.  ALJ's Findings**

The ALJ found that plaintiff suffers from the following severe impairments:  status post lumbar fusion surgery with chronic pain symptoms, status post neck surgery with chronic pain symptoms, status post myocardial infarction, and borderline intellectual functioning (AR 43).  The ALJ also found that plaintiff retains the RFC to perform light work, but with some limitations.  *Id.* at 45.

The ALJ considered plaintiff's age, education, work experience and RFC, and found that there are jobs that exist in significant numbers in the national economy that he can perform.  *Id.* at 55.  Accordingly, the ALJ determined that plaintiff "has not been under a disability," as defined in the Social Security Act.  *Id.* at 57.  Specifically, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since June 3, 2008, the application date (20 C.F.R. § 416.971, *et. seq.*).

2. The claimant has the following severe impairments: status post lumbar fusion surgery with chronic pain symptoms, status post neck surgery with chronic pain symptoms, status post myocardial infarction, borderline intellectual functioning (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except that the claimant can lift and carry, push and/or pull 10 pounds occasionally and frequently 5 pounds.  The claimant can sit 8 hours out of 8-hour day with normal breaks.  The claimant can stand and walk 6 hours out of an 8-hour day with normal breaks.  The claimant can never crawl.  The claimant can occasionally stoop, crouch, and kneel.  The claimant can never climb ladder, ropes or scaffolds.  The claimant can frequently grasp and finger.  The claimant can frequently flex and extend the head and neck.  The claimant can never work at unprotected hazardous machinery, or unprotected heights.

   The claimant also has the following nonexertional limitations:

   No limitation in the ability to understand, remember, and carry out short, simple instructions;

        No limitation in the ability to make judgments on simple and detailed work-related decisions;

        No limitation in the ability to interact appropriately with the public, supervisors, and the co-workers;

        Moderate limitation in the ability to respond appropriately to changes in a routine work setting;

        Moderate limitation in the ability to understand, remember, and carry out detailed instructions;

        Slight limitation in the ability to respond appropriately to work pressures in a usual work setting.

5. The claimant is unable to perform any past relevant work (20 C.F.R. § 416.965). [The claimant has past relevant work as a manual laborer/construction worker].

6. The claimant was born on June 19, 1967 and was 40 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 C.F.R. § 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969, 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, from February 5, 2010, through the date of this decision (20 C.F.R. § 416.920(f)).

*Id.* at 43-57.

## C. ALJ's Determination of Plaintiff's Residual Functional Capacity

Plaintiff first contends that the ALJ erred because he gave considerable weight to the opinions of Gary Starr, M.D., consultative examiner, and Albert Peterman, M.D., state agency reviewing physician, but that these opinions do not constitute substantial evidence (#17, p. 7).

Defendant responds that the ALJ took into consideration the findings of consultative examiners Dr. Starr and Richard Lewis, Ph.D., the opinions of state agency physicians Dr. Peterman and Jack Araza, Ph.D., and summarized and considered treatment notes from plaintiff's treating physicians Letitia Anderson, M.D. and Dante Vacca, M.D. and that, taken together, this evidence qualifies as substantial evidence that supports the ALJ's findings (#29, p. 4).

"It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). When the opinions of treating and examining doctors conflict, it is the ALJ's duty to resolve the conflicts. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). "[W]hen an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 325, 632 (9th Cir. 2008); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an examining physician's opinion "alone constitutes substantial evidence, because it rests on [the doctor's] own independent examination of [the claimant").

State agency doctors "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." SSR 96-6p. Their opinions qualify as substantial evidence to the extent they are consistent with the record. *See Bray v. Astrue*, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (ALJ properly relied "in large part on the [state agency] physician's assessment" in formulating claimant's RFC); *Tonapetyan*, 242 F.3d at 1149 (opinion of non-examining medical expert "may constitute substantial evidence when it is consistent with other independent evidence in the record"); *see also* 20 C.F.R. § 416.927(e) (agency will consider opinions from non-examining sources).

Consultative examiner Dr. Starr examined plaintiff on September 29, 2008 (AR 377-381). Dr. Starr's report states the following: he reviewed medical records and examined plaintiff, who is a

"well-developed, well-nourished male;" his thoracic spine was normal with no tenderness or deformity; his lumbar spine was straight; his straight leg rising test was negative for pain; and he had intact gait, station, balance and coordination. *Id*. at 378.  Plaintiff was a "very poor to terrible historian," was "vague" about his limitations and medications, and he stood with his muscles "intentionally tense." *Id*. at 377-378.  Plaintiff refused to participate in the lumbar range of motion portion of the examination, but his range of motion in all areas tested was normal. *Id*. at 378, 381. Plaintiff exhibited "give away weakness."[3]  *Id*. at 378.  Dr. Starr opined that plaintiff could lift twenty pounds occasionally and ten pounds frequently, could sit, stand or walk each day for up to six hours per eight-hour workday, and he limited plaintiff to occasional climbing, balancing, stooping, bending, kneeling, crouching, squatting and crawling.  *Id*. at 379.  Dr. Starr opined that that there was no medical reason that a "light, possibly better level of work could not be tolerated.  *Id*. at 378.

State agency physician Dr. Peterman reviewed and detailed the medical evidence in plaintiff's file, including Dr. Starr's report and orthopedic and cardiac records relating to plaintiff's back, neck and heart problems and diabetes.  *Id*. at 498-99.  His findings are similar to those of Dr. Starr:  plaintiff could lift twenty pounds occasionally and up to ten pounds frequently; sit and stand or walk for up to six hours each in an eight-hour workday; and frequently climb ramps or stairs, but never climb ladders, ropes or scaffolds.  *Id*. at 493-94.  Dr. Peterman limited plaintiff to occasional balancing, stooping, kneeling, crouching or crawling and found no manipulative limitations.  *Id*. at 494-495.

Defendant asserts that plaintiff's treating physicians do not provide objective evidence of any further limitations (#29, p. 6).  Plaintiff had a follow-up exam with his treating cardiologist, Dr.

---

[3] Defendant explains that "give away weakness" is a term used to describe when a patient feigns true muscle weakness or exhibits lack of full voluntary effort (#29, p. 5 n.4, citing Christopher J. Centeno, M.D., *The Spine Dictionary*, p. 104 (1999); *Simila v. Astrue*, 573 F.3d 503, 518-19 (7th Cir. 2009).

Anderson, on September 28, 2009 (AR 507-509).  Plaintiff reported to Dr. Anderson that he was "feeling well" and "working hard" with no limitations.  *Id*. at 507.  Plaintiff reported that he suffered neck pain, but that it was "a bit better after surgery."  *Id*.  Plaintiff had no swelling in his extremities, he had normal movement in all extremities and he had a normal gait.  *Id*. at 507-508.  Dr. Anderson stated in her report:  "Spent time counseling patient regarding exercise.  Patient is encouraged to engage in regular physical activity.  Patient was counseled on weight loss efforts."  *Id*. at 509.

Plaintiff had a follow-up exam with his surgeon, Dr. Vacca, on January 4, 2011, shortly before the January 14, 2011 hearing before the ALJ.  *Id*. at 715.  Dr. Vacca noted that plaintiff reported that his symptoms are "about the same" and asked about medical marijuana.  The doctor stated that while plaintiff initially appeared to benefit, "really the surgeries have not helped him."  Dr. Vacca also stated that plaintiff's postoperative CT scan looked "satisfactory" and that when he examined plaintiff, plaintiff exhibited giveaway weakness.  He ultimately concluded that further surgery would not help plaintiff.  *Id*.

The court concludes that the opinions of consultative examiner Dr. Starr and state agency physician Dr. Peterman are consistent with each other and with the majority of the other evidence in the record.  *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (state agency's doctor's "opinion was corroborated by the opinions of other examining and consulting physicians, which in turn were based on independent clinical findings").  Plaintiff's treating physicians do not provide objective evidence of any further limitations than Dr. Starr or Dr. Peterman found.  Plaintiff does not point to any other objective medical evidence in the record that suggests more restrictive limitations.  Therefore, the court agrees with defendant that these doctors' reports constitute substantial evidence supporting the ALJ's RFC determination.  *See* 20 C.F.R. § 416.927(c)(3), (4) (weight afforded medical opinion depends on how well-supported they are and how consistent they are with the other

evidence in the record); *Thomas*, 278 F.3d at 957 ("[t]he opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record"); *Tonapetyan*, 242 F.3d at 1149; *Saelee*, 94 F.3d at 522. As such, the ALJ did not err.

Second, plaintiff complains that substantial evidence does not support the ALJ's finding because he imposed slightly more restrictive limitations than those assessed by Dr.'s Starr and Peterman (#17, p. 10). While those doctors opined that plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, the ALJ found that plaintiff could lift and carry ten pounds occasionally and five pounds frequently (AR 45). However, an ALJ need not agree with everything contained in the medical opinions and can consider some portions less significant when evaluated against other evidence in the record. *See Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989). Apparently, the ALJ at least partially credited plaintiff's testimony at the hearing that he could not remove a gallon of milk from the refrigerator, but could manage a half or quarter-gallon container (AR 78). Defendant points out that plaintiff does not challenge the vocational analysis (#29, p. 8). Even assuming, *arguendo*, that the ALJ erred in assessing plaintiff with an RFC that was too limiting, any such error must necessarily be harmless. *Molina*, 674 F.3d at 1115 ("an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion'"). Plaintiff's challenge of the ALJ's assessing plaintiff slightly more restrictive limitations is meritless.

**D. ALJ's Credibility Determination**

Next, plaintiff argues that the ALJ impermissibly rejected plaintiff's subjective symptom testimony (#17, p. 11).

Congress expressly prohibits granting disability benefits based on a claimant's subjective complaints. 42 U.S.C. § 423(d)(5)(A) ("[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. § 416.929(a) (ALJ "will consider" all of a claimant's statements about symptoms including pain, but "statements about your pain or other symptoms will not alone establish that you are disabled"). "An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to [the Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ must evaluate the credibility of a claimant's subjective testimony in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. If the claimant meets the first test and there is no evidence of malingering, the ALJ may only reject the claimant's testimony about the severity of the symptoms if he or she gives 'specific, clear and convincing reasons' for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter*, 504 F.3d at 1036). "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).

A claimant's daily activities can demonstrate that she or he has exaggerated the symptoms or limitations. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ properly recognized that daily activities "did not suggest [the claimant] could return to his old job" but "did suggest that [the claimant's] later claims about the severity of his limitations were exaggerated"); *see also Molina v.*

*Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment") (citing *Valentine*).  The ALJ also considers objective evidence in the record when assessing credibility.  20 C.F.R. § 416.927(c).

Defendant argues that the ALJ properly rejected some of plaintiff's subjective symptom testimony (#29, p. 8).  The ALJ found that plaintiff's statements "concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment" (AR 51).  The ALJ partly based his credibility finding on the fact that plaintiff described activities of daily living that were inconsistent with the symptoms he alleged (AR 53).  Plaintiff testified that he has chronic neck and back pain.  *Id*. at 47.  He reported neuropathy and bilateral radiculopathy affecting his upper extremities.  He stated that he experiences numbness in his fingers, often drops things, and feels uncoordinated.  Plaintiff testified that he has back pain that radiates sharp and aching pain into his lower extremities.  *Id*.

However, plaintiff also testified that he can bathe, shave and dress himself, including operating zippers, and that he can cook and do laundry.  *Id*. at 53, 74.  Plaintiff stated that he can drive, acknowledging that he can "turn the steering wheel, back up, use foot pedals, and look both ways despite his complaints of severe neck and back pain."  *Id*.  Plaintiff also reported to his treating cardiologist, Dr. Anderson, in September 2009, that he was "feeling well" and "working hard" with no limitations.  *Id*. at 48.

The ALJ determined that, overall, plaintiff's description of his daily activities conflicted with his allegations concerning the severity of his symptoms.  *Id*. at 54.  *See also*, *Molina*, 674 F.3d at

1112 ("ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct").

Next, the ALJ found that plaintiff's complaints as to the severity of his neck and back pain also were not entirely credible because they were inconsistent with the weight of the medical evidence in the record. *Id*. at 51-54. "Factors that the adjudicator may consider when making such credibility determinations include the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). While medical opinions are not controlling in assessing credibility, they are nonetheless probative evidence for the ALJ to consider. 20 C.F.R. §§ 404.1529(c), 416.929(a)(2012); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). "[L]ack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, "[t]he fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). The causal relationship between the objective evidence of a medical impairment and the claimant's complaints need only be a "reasonable inference," not a "medically proven phenomenon." *See Smolen*, 80 F.3d at 1282.

As discussed above, plaintiff testified that he cannot work because of chronic pain in his back and neck and that he is unable to do anything during the day (AR 51). However, the state agency examiners deemed plaintiff capable of light work, and opined that the severity of some of plaintiff's reported symptoms was not fully supported. Plaintiff does not need any assistive device and has not received physical therapy. Treating physician Dr. Anderson noted that plaintiff's back and neck pain

symptoms had improved, and treating physicians regularly counseled plaintiff to exercise and watch his diet in order to lose weight. *Id*.

Finally, the ALJ found that plaintiff's credibility was diminished because the evidence demonstrated that, after two surgeries, he underwent only conservative treatment for his alleged continuing back and neck pain. *Id*. at 53. The ALJ also found that, to the extent that plaintiff alleges disability due to a mental impairment, he does not attend therapy, he has not recently received mental health treatment and he does not take medication for mental illness. *Id*.

The Ninth Circuit has explained that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). "[I]n assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The Ninth Circuit has described "physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset" as "conservative treatment" for back pain. *Tommasetti*, 533 F.3d at 1040.

Regarding any alleged mental disability, plaintiff had not received any recent therapy or mental health treatment, nor does he take medication for mental illness (AR 53, 398). The ALJ observed that "the record is void of a statement from a mental health professional suggesting a worsened condition or one that would preclude work activity." *Id*. at 53. With respect to his ongoing neck and back pain, plaintiff reported to his treating physician's assistant, Scott P. Stimson, in November 2010 that there was "no change to his chronic pain" and that his pain medication was

"sufficient." *Id*. at 596. In September 2010, plaintiff reported to Mr. Stimson that his pain levels were stable and that he received relief from his pain medication. *Id*. at 597. Plaintiff has never been prescribed a TENS unit or other assistive device. *Id*. at 77. Nothing in the record indicates that plaintiff ever underwent physical therapy. *Id*. at 53.

The court concludes that the ALJ properly based his determination that plaintiff's testimony regarding the extent and severity of his symptoms and limitations was not credible on the fact that plaintiff's statements conflicted with substantial medical evidence in the record as well as with his admitted daily activities and conservative treatment of his alleged symptoms. Substantial evidence in the record supports the ALJ's credibility determination, and therefore, the ALJ did not err.

## IV. CONCLUSION

Based on the foregoing, the court concludes that substantial evidence in the record supports the ALJ's determinations. Specifically, the ALJ did not err in assessing plaintiff's RFC for light work, and in determining that plaintiff's testimony as to the extent and severity of his symptoms and limitations was not entirely credible. The court recommends that plaintiff's motion for remand/reversal (#17) be denied and defendant's cross-motion to affirm the Commissioner's decision (#29) be granted. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand/reversal (#17) be **DENIED** and defendant's cross-motion to affirm the Commissioner's decision (#29) be **GRANTED**.

**DATED:** March 24, 2014.

_____
**UNITED STATES MAGISTRATE JUDGE**